NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400
Attorneys for Plaintiffs

| | |
|---|---|
| MELANIE RAIT, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>SEARS, ROEBUCK AND CO., an Illinois Corporation AND SEARS HOLDINGS CORPORATION, an Illinois Corporation,<br><br>Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br><br>CASE NO. 2:08-cv-02461 (JLL) |

---

**MEMORANDUM OF LAW ON BEHALF OF PLAINTIFFS
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

---

Of Counsel
On the Brief
Bruce H. Nagel
Robert H. Solomon

NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400
Attorneys for Plaintiff
Melanie Rait

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ................................................................ ii

I.   PRELIMINARY STATEMENT ........................................................ 1

II.   PROCEDURAL AND FACTUAL HISTORY ..................................... 2

III.   LEGAL STANDARD UNDER RED. R. CIV. P. 12(b)(6) ................... 4

IV.   PLAINTIFF HAS PROPERLY PLED HER CAUSES
OF ACTION ............................................................................ 7

    A.     PLAINTIFF HAS PROPERLY PLED HER
FRAUD CLAIMS ............................................................... 7

    B.     PLAINTIFF'S STATUTORY AND COMMON
LAW FRAUD CLAIMS HAVE BEEN PLED WITH
SUFFICIENT SPECIFICITY ................................................. 18

V.   PLAINTIFF'S CLAIM OF UNJUST ENRICHMENT/
RESTITUTION IS ACTIONABLE ............................................... 23

VI.   PLAINTIFF HAS PROPERLY PLED A CAUSE OF
ACTION FOR BREACH OF IMPLIED WARRANTY
OF FITNESS FOR A PARTICULAR PURPOSE ......................... 27

CONCLUSION ................................................................................ 30

## TABLE OF AUTHORITIES

PAGE(S)

<u>CASES</u>

<u>Berkeley Pump Co. v. Reed-Joseph Land Company</u>
279 Ark. 384 (1983) ...................................................................28

<u>Bogosian v. Gulf Oil Corp.</u>
561 F.2d 434 (3d Cir. 1977) .........................................................5

<u>Bowers v. Curran</u>
No. 94-1510, 1994 U.S. Dist. LEXIS 5892
(E.D. Pa. May 9, 1994) ................................................................6

<u>Brever v. Rockwell Int'l Corp.</u>
40 F3d 1119 (10th Cir. 1994) .......................................................5

<u>Christidis v. First Penn. Mtg. Trust</u>
717 F.2d 96 (3d. Cir. 1984) .........................................................19

<u>Component Hardware Group, Inc. v. Trine Rolled Moulding Corp.</u>
No. 05-891, 2007 U.S. Dist. LEXIS 54900 (D.N.J. July 27, 2007) ...................................26

<u>Conley v. Gibson</u>
355 U.S. 41 (1957) ......................................................................6

<u>Cox v. Sears Roebuck & Co.</u>
138 N.J. 2 (1994) ...................................................................8, 17

<u>D'Ercole Sales, Inc. v. Fruehauf Corp.</u>
206 N.J. Super 11 (App. Div. 1985) ...........................................8, 9

<u>Doe v. Div. Of Youth & Family Servs.</u>
148 F.Supp.2d 462 (D.N.J. 2001) ...............................................4

<u>Doug Grant, Inc. v. Great Bay Casino Corp.</u>
232 F.3d 173 (3d Cir. 2000), cert. denied, 532 U.S. 1038 (2001) ...................................5

<u>Dykstra v. Ryder/P.I.E. Nationwide, Inc.</u>
No. 85-3212, 1985 WL 25639 (D.N.J. Dec. 9, 1985) ......................................27

<u>Filler v. Rayex Corp.</u>
435 F.2d 336 (7th Cir. 1970) .................................................28, 29

Fink v. Richo Corp.
365 N.J. Super. 520 (Law Div. 2003) .................................................................9

Foont-Freedenfeld Corp. v. Electro-Protective Corp.
126 N.J. Super. 254 (App Div. 1973), aff'd 64 N.J. 197 (1974)...........................7

Grayson v. Mayview State Hosp.
293 F. 3d 103 (3d Cir. 2002) ..............................................................................16

Gregory Surgical Serv., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.
No. 06-0462, 2006 WL 3751385 (D.N.J. Dec. 19, 2006 ....................................16

Hishon v. King & Spalding
467 U.S. 69 (1984)...............................................................................................4

Hundred East Credit Corp. v. Schuster
212 N.J. Super. 350- (App. Div. 1986) ..............................................................12

In re Ford Motor Co. E-350 Van Products Liability Litigation
No. 03-4558, 2008 WL 4126264 (D.N.J. Sept. 2, 2008).....................................25

In re K-Dur Antitrust Litig.
338 F.Supp. 2d 517 (D.N.J. 2004) .....................................................................27

In re Prudential Ins. Co. of Am. Sales Practices Litig.
975 F.Supp. 584 (D.N.J. 1996)...........................................................................26

Interdigital Technology Corp. v. OKI Am.
845 F. Supp 276 (E.D. Pa. 1994).........................................................................6

Jewish Center of Sussex County v. Whale
86 N.J. 619 (1981).............................................................................................7, 8

Kugler v. Romain
58 N.J. 522 (1971) .........................................................................................10, 12

La Porte County Republican Cent. Comm. V. Board of Comm'rs
43 F.3d 1126 (7th Cir. 1994)................................................................................7

Lewis v. Mobil Oil Corp.
438 F.2d 500 (8th Cir. 1971)..............................................................................28

LG Elects. Inc. v. First Int'l Computer, Inc.
138 F. Supp.2d 574 (D.N.J. 2001) .......................................................................5

Mardini v. Viking Freight, Inc.

92 F. Supp 2d 378 (D.N.J. 1999)..............................................................20

Miller v. American Family Publishers
284 N.J. Super. 67 (Ch. Div. 1995)...................................................17, 18

Moore v. Tartler
986 F.2d 682 (3d Cir. 1993) .................................................................5

New Jersey Sports Prods. V. Don King Prods.
1997 U.S. Dist. LEXIS 23209 (D.N.J. Oct. 28, 1997)...........................19

Palmeri v. LG Electronics USA, Inc.
07-5706, 2008 WL 2945985 (D.N.J. July 30, 2008 ................16, 23, 24, 25

Parker v. Howmedica Osteonics Corp.
2008 WL 141628 (D.N.J. Jan. 14, 2008) ..........................................22

Perth Amboy Iron Works, Inc. v. American Home Assur. Co.
226 N.J. Super. 200 (App. Div. 1988) ..............................................13

Peters v. LG Electronics USA, Inc.
2007 WL 4591405 (D.N.J. 2007) .....................................................21

Ramanadham v. New Jersey Mfrs. Inc. Co.
188 N.J. Super. 30 (App. Div. 1982) ................................................18

Renz v. Schreiber
832 F.Supp. 766, (D.N.J. 1993).........................................................5

Rocks v. Philadelphia
868 F.2d 644 (3d Cir. 1989) ..............................................................5

Schrob v. Catterson
948 F.2d 1402 (3d Cir. 1991) ............................................................5

Seville Indus. Machinery v. Southmost Machinery
742 F.2d 786 (3d Cir. 1984) .......................................................19, 21

Stroud v. Senese
832 F. Supp. 1206 (N.D. Ill. 1993) .....................................................6

Strzakowlski v. General Motors
2005 WL 2001912 (D.N.J. 2005) ................................................5, 20

Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC
2006 U.S. Dist. LEXIS 7129 (D.N.J. Feb. 24, 2006)........................18, 19

*Talalai v. Cooper Tire & Rubber Co.*
823 A. 2d 888 (N.J. Law Div. 2001) ........................................................6

*Titan Stone, Tile & Masonry, Inc. v. Hunt Construction Groyup, Inc.*
No. 05-3362, 2006 U.S. Dist. LEXIS 70569 (D.N.J. Sept. 26, 2006) ............................26

*Unger v. Nat'l Residents Matching Program*
928 F.2d 1392 (3d Cir. 1991) ........................................................5

*Union Ink Co. v. AT&T Corp.*
352 N.J. Super. 617 (App. Div. 2002) ........................................................17

*United States v. Blakeman*
997 F.2d 1084 (5th Cir. 1993), cert. denied 114 S. Ct. 687........................................5, 17

*Varacallo v. Massachusetts Mutual Life Ins. Co.*
329 N.J. Super. 31 (App. Div. 2000) ........................................................11

*Weichert Co. Realtors v. Ryan*
128 N.J. 4227 (1992)........................................................23

*Zorba Contractors, Inc. v. Housing Auth., City of Newark*
362 N.J. Super. 124 (App. Div. 2003) ........................................................11

**COURT RULES**

Rule 12(b)(6) ........................................................6

Rule 9(b)........................................................19, 21

**STATUTES**

N.J.S.A. 56:8-1........................................................8, 9
N.J.S.A. 56:8-2........................................................8, 10
N.J.S.A. 56:8-4........................................................8
N.J.S.A. 12a:2-315........................................................27, 28

I.   Preliminary Statement

Plaintiff, Melanie Rait purchased a defective and inferior garage door opener from Sears.  As a result of the malfunctioning product, Plaintiff was forced to pay Sears an additional $65 to repair her unit. Plaintiff filed a class action suit on behalf of herself and others similarly situated alleging fraud and other wrongful conduct on the part of Sears.

Postings throughout the internet and on Sears' own website detail numerous problems and defects with Sears Craftsman garage door openers. Despite having the knowledge of the defects and inferior quality of its products, Sears sold its products to unknowing consumers. If that was not enough, as a result of the defective product, consumers, like Ms. Rait, were forced to hire Sears' service persons to repair the units at additional costs to the customer. Defendants' conduct violates, among other laws, the New Jersey Consumer Fraud Act.

Plaintiff has set forth her claims in the Complaint in clear and precise terms. We have laid out the facts related to the purchase of the unit and payment of costs, including the additional repair costs. We have pled how Defendants became aware of the defects and the fact that Defendants

took no action other than to continue to sell the units without informing the public of the defects and problems. We further pled the details of Defendants' improper plan to extract additional monies from customers beyond the purchase price of the units by selling defective products and requiring customers to hire and pay Sears' service persons to fix the problems. Charging repair costs to fix problems that Sears knew about at the time of sale is reprehensible and must not be countenanced.

Defendants' Motion to Dismiss should be denied and Plaintiff should be allowed to pursue her claims through discovery, class certification and trial.

## II. Procedural and Factual History

Plaintiff filed a class action complaint against the Defendants asserting claims for violations of the New Jersey Consumer Fraud Act (Count I), fraud (Count II), unjust enrichment (Count III), breach of the implied warranty of fitness for a particular purpose (Count IV) and breach of the implied warranty of merchantability (Count V). Defendants filed a Motion to Dismiss Counts I, II, III, and IV of the Complaint. Defendants did not move on Count V.

In January, 2007 Plaintiff went on Defendants' website to look for a garage door opener. Compl. at ¶¶18-19. Plaintiff looked at various models and the information provided by Defendants in the website. Id. Plaintiff wanted a garage door opener with an excellent lighting system because she wanted her garage well lit. Id. Based on the information provided by Defendants' website and the various models she looked at, Plaintiff selected the Sears Craftsman garage door opener with double lights. Compl. at ¶¶18-20. She paid $171.19 for the unit and then was charged an additional $125.99 for installation. Compl. at ¶¶20-21. After using the garage door opener for approximately three weeks, one of the lights went out. Compl. at ¶23. Plaintiff replaced the bulb at least six separate times. The bulbs only lasted between two days and two weeks. Compl. at ¶24.

Given the repeated failures, Plaintiff called for a Sears repair technician to fix the problem. Compl. at ¶25. The technician replaced the defective socket. Id. Plaintiff had to pay the Defendants' repair technician $65 to fix the defective part that had been malfunctioning since the third week of use. Compl. at ¶26.

After experiencing the failures of Defendants' garage door opener, Plaintiff became aware of numerous complaints

on various internet sites as well as Sears' own website regarding similar issues with Defendants' garage door openers. Compl. at ¶¶29.  Given that these complaints are replete throughout the internet and specifically on Defendants' website, Defendants had actual knowledge of the problems, defects and inferior quality of their products and the tendency of the products to malfunction or cease to function. Compl. at ¶8.  Despite this knowledge, Defendants sold and continue to sell the defective and inferior products to the public and received and continue to receive monies related to repair costs. Compl. at ¶¶9-10.

### III. <u>Legal Standard Under Fed. R. Civ. P. 12(b)(6)</u>

It is undisputed that in considering a motion to dismiss, the court may dismiss a complaint for failure to state a claim only if, "it appears beyond any doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations." <u>Doe v. Div. Of Youth & Family Servs.</u>, 148 F.Supp.2d 462, 481 (D.N.J. 2001)(<u>citing</u> <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).  In deciding a motion to dismiss for failure to state a claim, the Court must "accept as true all the allegations in the complaint and all reasonable inferences

that can be drawn therefrom, and view them in the light most favorable to the non-moving party." LG Elects. Inc. v. First Int'l Computer, Inc., 138 F.Supp.2d 574, 582-83 (D.N.J. 2001) (quoting Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989)); Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993); Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1400 (3d Cir. 1991); Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991); Doug Grant, Inc. v. Great Bay Casino Corp., 232 F.3d 173, 183 (3d Cir. 2000), cert. denied, 532 U.S. 1038 (2001); Renz v. Schreiber, 832 F.Supp. 766, 770 (D.N.J. 1993). Motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) are not favored and must be granted sparingly. United States v. Blakeman, 997 F.2d 1084 (5th Cir. 1993), cert. denied 114 S. Ct. 687; Brever v. Rockwell Int'l Corp., 40 F3d 1119 (10th Cir. 1994).

It is well settled in this Circuit that a complaint is not required to "plead evidence, and it is not necessary to plead all facts that serve as a basis for the claim or spell out the theory of liability under which the Plaintiff hopes to recover." Strzakowlski v. General Motors, 2005 WL 2001912 (D.N.J. 2005), *2 (citing Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977)). Under the liberal federal pleading rules, a pleading is sufficient if it

contains "a short and plain statement of the claim showing that the pleader is entitled to relief" and is enough to give Defendants "fair notice of what the Plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. at 41, 47 (1957). Thus, the court's analysis is one of legal viability and not of the actual likelihood of success. Talalai v. Cooper Tire & Rubber Co., 823 A. 2d 888, 894 (N.J. Law Div. 2001). Indeed, dismissal is "difficult to obtain," Bowers v. Curran, No. 94-1510, 1994 U.S., Dist. LEXIS 5892, at *2 (E.D. Pa. May 9, 1994), especially in the context of consumer fraud class action litigation.

Dismissal pursuant to Rule 12(b)(6) is not justified by a "technical" defect in the complaint. Stroud v. Senese, 832 F.Supp. 1206 (N.D. Ill.1993). Furthermore, a complaint should not be dismissed merely because Plaintiff's allegations do not support the particular legal theory advanced; the court should examine the allegations to determine whether they call for relief on any possible theory. Interdigital Technology Corp. v. OKI Am., 845 F.Supp. 276 (E.D. Pa. 1994). Likewise, the court should not order a 12(b)(6) dismissal because all of the elements that give rise to a legal basis for recovery have not been

stated in the complaint.  La Porte County Republican Cent. Comm. V. Board of Comm'rs, 43 F.3d 1126 (7th Cir. 1994).

### IV.   Plaintiff has Properly Pled Her Causes of Action

### A.   Plaintiff Has Properly Pled Her Fraud Claims

Plaintiff has properly pled causes of action for common law fraud and equitable fraud. See Compl., Count II. The Complaint also properly pleads a cause of action for violation of New Jersey's Consumer Fraud Act.  See id. at Count I.  Each of these counts is properly pled with the particularity required by the Court Rules, and each states a viable cause of action against defendants.

The elements of common law fraud or deceit are: (i) a false representation made by the defendant of a presently existing or past fact; (ii) the defendant's knowledge or belief that the representation was false; (iii) intent to induce the plaintiff to act or to refrain from acting; (iv) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (v) damage to the plaintiff as a result of such reliance.  Jewish Center of Sussex County v. Whale, 86 N.J. 619, 624 (1981); Foont-Freedenfeld Corp. v Electro-Protective Corp., 126 N.J. Super. 254 (App. Div. 1973), aff'd 64 N.J. 197 (1974). Equitable fraud requires a similar, but less onerous,

standard.    A properly pled cause of action for equitable fraud tracks the elements of common law fraud with one significant exception: to be found liable for equitable fraud under New Jersey law, "the elements of scienter, that is knowledge of the falsity and an intention to obtain an undue advantage therefrom" are *not* required.    Jewish Center of Sussex County, 86 N.J. at 625.    Thus, the elements of equitable fraud are: (i) false representation; (ii) intent to induce action or inaction; (iii) justifiable reliance; and (iv) damage.    Id.[1]

New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. (the "CFA"), embodies an even more liberal standard than either common law or equitable fraud.    First, an unlawful practice under N.J.S.A. 56:8-2 or 56:8-4 is committed regardless if a person was mislead or deceived. Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994). Moreover, the CFA does not require proof that a given misrepresentation was made with intent to induce the plaintiff's action or inaction.    Id. The CFA is specifically applicable to the sale of a household product. D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J. Super 11, 23 (App.

---

[1] Under the doctrines of both legal and equitable fraud, omissions are to be treated the same as an affirmative false statement.    See Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 610 (1989); Strawn v. Canuso, 271 N.J. Super. 88, 104, 105 (App. Div. 1994).

Div. 1985); <u>Fink v. Ricoh Corp.</u>, 365 N.J. Super. 520, 571 (Law. Div. 2003).

To prevail under the CFA when the claim involves an affirmative act, a plaintiff need only demonstrate: (i) that defendants committed an unlawful practice such as a misleading statement or deceptive marketing; (ii) with the intent that Plaintiffs rely upon same; and (iii) that damage resulted therefrom. When an omission is asserted, an additional element of intent is included.

Plaintiff's allegations satisfy the requirements for its causes of action for common law fraud, equitable fraud and violation of the CFA. With regard to the claims under the Consumer Fraud Act, plaintiff alleges with particularity Defendants wrongful conduct as follows:

34. Defendants violated the New Jersey Consumer Fraud Act (hereinafter, "CFA"), N.J.S.A. 56:8-1, *et seq.*, by instituting and implementing business processes and practices intended to place inferior products and parts on the market and seek additional profit from charging Plaintiff and similarly situated customers additional and excessive fees for service visits by repair technicians in order to repair and replace these inferior products.

35. Defendants violated the CFA by failing to properly disclose to Plaintiff and members of the Class, the terms, conditions, and fees associated with service and repairs to their Sears Craftsman brand garage door openers.

36. Defendants violated the CFA by failing to disclose to Plaintiff and members of the Class that the repair policies associated with the inferior products were intended to enable Sears to illegally profit by charging Plaintiff and similarly situated consumers in excess of and in addition to the purchase price and in some cases, the installation price, already paid for the Sears Craftsman garage door openers.

37. Defendants violated the CFA by their use of false and misleading representations in connection with the terms, conditions and fees associated with the purchase of these Sears Craftsman garage door openers.

38. Plaintiff and members of the Class were falsely led to believe by Defendants' sales practices, conduct and representations that the fees charged to customers were not grossly excessive and were reasonably related to the cost of Defendants' Sears Craftsman garage door openers.

Compl. at ¶¶34-38.

The New Jersey Consumer Fraud Act prohibits:

Unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission.

N.J.S.A. 56:8-2. The unconscionability clause contemplates a standard of "good faith, honesty in fact and observance of fair dealing." Kugler v. Romain, 58 N.J. 522, 544, (1971). Defendants ignore Plaintiff's bases for a consumer fraud claim, and instead simply attempts to defend its

product. Plaintiff's claims are straightforward. Defendants sold garage door openers to the public. The products were defective and failed. Postings on internet sites and Sears' own website confirmed the defects and problems. Compl. at ¶29; As a result of the internet postings and complaints directly to Sears, Sears became aware of the defects and problems with the products.[2] Despite this knowledge, Defendants continued to sell the defective product to the public without informing the public of the problems and defects. In other words, Defendants knew or should have known that their product was defective and failed to take any action to correct the problem and failed to notify the consumer of the problem prior to purchase. As a result of Defendants' omissions, Plaintiff was caused to hire a Sears repair company to fix the known defect at the cost of $65.

"To establish a private CFA claim involving an omission of a material fact, a Plaintiff must demonstrate that the Defendant 'concealed, suppressed or omitted a material fact, knowingly, and with the intent that other rely on the omission.'" Zorba Contractors, Inc. v. Housing Auth., City of Newark, 362 N.J. Super. 124, 139 (App. Div.

---

[2] Discovery will uncover the full extent of the complaints regarding the products. For example, service and repair records will demonstrate how many units failed. We anticipate that there will be thousands of service calls regarding the defective and inferior quality of Sears Craftsman garage door openers. This information will further confirm Sears' knowledge of the defects and malfunctions.

2003) (quoting <u>Varacallo v. Massachusetts Mutual Life Ins.
Co</u>., 332 N.J. Super. 31, 43 (App. Div. 2000)). Plaintiff
has alleged that numerous complaints related to Sears
garage door openers are replete on internet sites and
Sears' own website. Complaint ¶29. Thus, Sears was aware of
problems and defects with the product. Complaint ¶8.
Despite this knowledge, Sears sold the defective product to
the public. Complaint ¶9. Pointedly, Sears omits to inform
the public of the known defects and problems with the
products. <u>Id</u>. Plaintiff has alleged that Defendants failed
to inform consumers that the garage door openers, including
the lighting mechanisms, were defective, and that the
repairs initiated through the Defendants, and part of
Defendants improper plan, would cost monies beyond the
purchase price of the product. Complaint ¶10; ¶¶ 18-48.
Plaintiff has thus pleaded facts sufficient to establish
that Defendants engaged in unconscionable commercial
practices in violation of the CFA.

The determination of whether a practice violates the
CFA is made on a case-by-case basis. <u>See Kugler</u>, 58 N.J. at
543; <u>Hundred East Credit Corp. v. Schuster</u>, 212 N.J. Super.
350, 357 (App. Div. 1986). The concealment of known defects
in a commercial product, however, has consistently been
found to be an unconscionable commercial practice that

gives rise to CFA claim. In <u>Perth Amboy Iron Works, Inc. v.</u> <u>American Home Assur. Co.</u>, 226 N.J. Super. 200, 211-12 (App. Div. 1988), the Appellate Division held that the Plaintiff's claims that Defendants' concealment of the allegedly defective nature of yacht engines were questions of fact for the jury.

With regard to the claims of fraud, Plaintiff alleges with particularity Defendants wrongful conduct as follows:

5. Serious problems exist with the design and/or manufacture of Sears Craftsman brand garage door openers.

6. Due to these design and/or manufacturing defects, the garage door openers have a tendency to malfunction and/or cease to function.

7. The result is that a substantial number of consumers nationwide who thought they were purchasing reliable and high quality garage door openers from a reputable company have had various functions of their garage door openers malfunction or cease to function at any given moment during ordinary use.

8. At the time Sears designed, manufactured, marketed and/or sold the Sears Craftsman brand garage door openers, Sears was aware of the defective nature of the design and/or manufacture of the product and its tendency to malfunction or cease to function as marketed and sold, resulting in damage to consumers.

9. Notwithstanding its knowledge of the defective problems regarding the garage door openers, Sears designed, manufactured, marketed and/or sold the garage door openers without informing the public of the above problems.

10. Sears continues to deceive the public with false and misleading statements and continues to sell defective Sears Craftsman brand garage door openers that cause damage to consumers, including but not limited to service and repair costs.

41. The actions of Defendants constitute fraudulent conduct, including but not limited to, knowingly making material misrepresentations and/or omissions regarding the quality of the Sears Craftsman garage door openers and the repair policy and fees associated with malfunctioning and/or defective units, upon which misrepresentations and/or omissions Plaintiff and members of the Class reasonably relied.

42. Defendants made material misrepresentations and/or omissions to Plaintiff and other Class members by instituting and implementing business processes intended to generate additional revenue as a result of placing inferior and/or defective garage doors on the market, generating additional revenue and profiting by charging Plaintiff and similarly situated consumers additional and excessive repair and service charge fees, upon which misrepresentations and/or omissions Plaintiff and members of the Class reasonably relied.

43. Defendants made material misrepresentations and/or omissions to Plaintiff and other Class members by failing to disclose to Plaintiff and members of the class that Sears was designing, marketing and selling inferior and/or defective garage door openers and by failing to disclose that these inferior products would require follow-up service and repairs at an additional cost to the consumer.

44. Defendants made material misrepresentations and/or omissions to Plaintiff and other class members by failing to disclose that its service and

repair policies and procedures were intended to enable Sears to illegally profit from charging Plaintiff and similarly situated consumers additional and excessive fees on top of the purchase price and installation charges for the product.

45. Defendants made material misrepresentations and/or omissions via its sales practices, conduct and representations, and falsely represented to Plaintiff and members of the Class that the service and repair fees associated therewith were routine, not attributable to the inferior and/or defective product that Sears manufactured, marketed and sold to consumers and/or at additional costs to the consumer.

46. Defendants made material misrepresentations and/or omissions via its sales practices, conduct and representations, and falsely represented to Plaintiff and members of the Class that the repair and service fees were not excessive and were reasonably related to the cost of the Sears Craftsman garage door openers.

29. . . . Plaintiff is aware of numerous complaints on various internet sites as well as Sears' own website regarding similar issues with Sears Craftsman brand garage door openers.

Compl. at ¶¶5-10; 29 and 41-46.

Plaintiff thus has alleged that Defendants knew their products were defective and inferior and sold the products to the public without informing the public of the defects. Further, by omitting to inform the public of the defects, Sears knew that the product would likely fail and customers would need repairs. Sears knew that by not informing the

public about the defects in the product would result in the products failing and Sears receipt of additional monies by way of repair costs.  The end result is that customers must pay monies beyond the purchase price of the products and Defendants reap substantial monetary benefit. Together with Plaintiff's allegations of reliance and damages, see Compl. ¶¶ 38-39 and 47-48, these allegations clearly set forth causes of action for common law fraud, equitable fraud and violation of the CFA that are sufficient to defeat a motion to dismiss.[3]

Defendants argue that Plaintiff's complaint must be dismissed because Plaintiff alleges "no more than that plaintiff purchased a defective garage door opener." Defendants' Br. at 7-8. Obviously, this statement is wrong and is an attempt to deflect attention away from Defendants

---

[3] Should the Court find that Plaintiff has not pled her fraud claims with the requisite particularity, Plaintiff respectfully requests that the Court not dismiss the complaint, but rather permit Plaintiff to file an amended complaint. Gregory Surgical Serv., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc., No.06-0462, 2006 WL 3751385, at *2 (D.N.J. Dec. 19, 2006); Grayson v. Mayview State Hosp., 293 F. 3d 103, 108 (3d Cir.2002)("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile."); Palmeri v. LG Electronics USA, Inc., 07-5706, 2008 WL 2945985 at *3 (D.N.J. July 30, 2008)(After finding that plaintiff did not plead New Jersey Consumer Fraud Act claims with particularity, Court provided plaintiff with opportunity to replead).  If so required, Plaintiff can re-plead her causes of action to include the necessary factual allegations in a higher level of detail.  It would be extremely unfair to dismiss Plaintiff's Complaint without providing Plaintiff an opportunity to cure any defects found by the Court.

wrongful and fraudulent conduct. The complaint goes well beyond simple defect and warranty claims. Defendants perpetrated a fraud on the public by selling a defective product knowing that the product would likely fail and customers would have to pay Defendants more than the purchase price.

Defendants' argument that Plaintiff has failed to plead a causal relationship between the unlawful conduct and Plaintiff's loss is simply not true. Plaintiff suffered an ascertainable loss when she purchased a garage door opener that was defective. "An ascertainable loss occurs when a consumer receives less than what is promised." Union Ink Co. v. AT&T Corp., 352 N.J. Super. 617, 646 (App. Div. 2002); see also Miller v. American Family Publishers, 284 N.J. Super. 67, 90-91 (Ch. Div. 1995) ("For their money, they received something less than and different from what they reasonably expected in view of Defendant's presentations. This is all that is required to establish ascertainable loss."). In order to establish the element of causation under the CFA at the pleading state, Plaintiff is merely required to demonstrate that there is a "causal relationship between the unlawful practice and the 'ascertainable loss.'" Miller, 284 N.J. Super. at 76 (citing Ramanadham v. New Jersey Mfrs. Inc. Co., 188 N.J.

Super. 30 (App. Div. 1982)); see also Cox v. Sears Roebuck & Co., 138 N.J. 2, 21-23 (1994). Miller mandates that once a Plaintiff establishes an "unlawful act" under the CFA and that she received something less than she bargained for from the Defendant, a claim is made under the NJCFA.

Plaintiff paid full price for a garage door opener that contained a defect.  She received less than what she was supposed to receive, and thereby suffered an ascertainable loss.  Further, as a result of Defendants improper conduct, Plaintiff was required to pay for repairs above and beyond the purchase price.  These repair costs also constitute loss. Plaintiff has alleged that Defendants made, among others things, material omissions with regard to the sale of the garage door openers and that as a result of these omissions, Plaintiff purchased the defective product, and was caused to expend additional monies ($65) to repair the defective product. See Compl. ¶¶ 38-39 and 47-48. As such, Defendants' motion should be denied.

B.   Plaintiff's Statutory and Common Law Fraud
     Claims Have Been Pled With Sufficient Specificity

When pleading an allegation of fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC, 2006 U.S. Dist. LEXIS 7129 (D.

N.J. Feb. 24, 2006) <u>citing</u> Fed. R. Civ. P. 9(b). However, the rule is not so draconian that no Plaintiff, before discovery was conducted, could ever satisfy its burden under the Federal Rules.

Rather, this Circuit has held: "A court must apply the heightened pleading standards of Rule 9(b) in accordance with the rule's underlying purpose – namely that the Defendant: (a) be put on notice of the precise misconduct surrounding the allegation of fraud asserted against him and (b) guarded against 'spurious charges of immoral or fraudulent behavior'". <u>Seville Indus. Machinery v. Southmost Machinery</u>, 742 F.2d 786, 791 (3d Cir. 1984). <u>See also</u> <u>Christidis v. First Penn. Mtg. Trust</u>, 717 F.2d 96, 100 (3d. Cir. 1984) ("focusing exclusively on Rule 9(b)'s 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated' by the Federal Rules of Civil Procedure."); <u>New Jersey Sports Prods. v. Don King Prods.</u>, 1997 U.S. Dist. LEXIS 23209, at *42 (D. N.J. Oct. 28, 1997) ("[T]he central inquiry . . . is whether the complaint is sufficiently precise to place the Defendant on notice . . ."). In both <u>Sunset</u> and <u>Seville,</u> the Third Circuit held that fraud was pled with enough specificity even though the precise words were not necessarily pled. <u>See</u> <u>Sunset</u>

*Financial*, 2006 U.S. Dist. LEXIS at \*31 and *Seville*, 742 F.2d at 791. In addition, Plaintiffs are not required to "plead issues that may have been concealed by the defendant." *Strzakowlski*, 2005 U.S. Dist. LEXIS 18111, citing *Mardini v. Viking Freight, Inc.*, 92 F.Supp. 2d 378, 385 (D. N.J. 1999).

It is not Plaintiff's obligation at the pleading state to prove all the elements of a cause of action for fraud or violation of the Consumer Fraud Act by a preponderance of the evidence. All Plaintiff must do is provide Defendant with notice of its claim. Plaintiff has satisfied this burden.

Plaintiff has properly placed Defendant on notice of her common law and statutory fraud claim. In the Complaint's "Nature of the Case" and factual background section, Plaintiff asserts the complete details of her purchase of the defective product and the details of the Defendants' improper plan. (Compl. ¶¶ 2-10 and 18-26). The Complaint also establishes that Defendants knew or should have known of the defects in the products as a result of Defendants own website postings which detail the many problems that customers encountered with the product. Defendants took no actions to fix the defective units. To the contrary, Defendants orchestrated a plan "intended to

place inferior products and parts on the market and seek additional profit from charging Plaintiff and similarly situated customers additional and excessive fees for service visits by repair technicians in order to repair and replace these inferior products." (Compl. ¶34). Additionally, the Complaint avers that Defendants omitted informing customers of the known defects in the garage door openers and the repair fees associated with the malfunctioning and defective products. (Compl. ¶41-42).[4] While Defendants may be unhappy that someone has uncovered its wrongdoing, that is not cause for dismissal of the Complaint.

The Third Circuit is clear that too much attention should not be paid to the 'particularity' language of Rule 9(b). See Seville, 742 F.2d at 791. Here, the Complaint provides Defendants with notice of Plaintiff's claim. Given the standard required for a motion for judgment on the pleadings, Plaintiff respectfully requests that Defendants' Motion for Judgment on the Pleadings be denied.

Defendants' reliance on Peters v. LG Electronics USA, Inc., 2007 WL. 4591405 (D.N.J. 2007) is misplaced. Peters involves claims related to a defective television. Defendant moved to dismiss the Complaint. Plaintiff did not

---

[4] Discovery will uncover the full extent of Defendants' plan.

file any responding papers and the Motion was decided
<u>without opposition</u>. The Court dismissed the unopposed
motion finding that the Complaint was not pled with
specificity.  Based on the excerpts of the Complaint set
forth in the opinion, the Peters' Complaint contained far
less specificity than the Complaint at issue in our case.
Here, Plaintiff has set forth in detail the specifics of
her purchase and problems with the unit and Defendants'
fraudulent and wrongful conduct.

   <u>Parker v Howmedica Osteonics Corp.</u>, 2008 WL 141628
(D.N.J. Jan. 14, 2008) is distinguishable from our case.
<u>Parker</u> involves claims against the manufacturer of a device
implanted in patients requiring a total hip replacement.
With regard to the NJCFA claims, the Court granted the
motion to dismiss finding that the complaint did not
adequately allege the "unlawful behavior" in sufficient
detail.  Unlike the <u>Parker</u> complaint, the Complaint in the
case at bar provides the detail of the unlawful behavior
and the material omissions.  Further, the Court found that
plaintiff Parker did not properly plead an "ascertainable
loss".  In addition, the <u>Parker</u> Court held that possible
future costs associated with medical care and services are
too speculative.  Here, unlike <u>Parker</u>, we have pled that
the $65 repair charge is a direct result of the Defendants'

improper plan.  Further, we do not allege any speculative damages or other damages similar to future medical costs and services.

Plaintiff's Complaint is pled with the necessary particularity and Defendants' motion to dismiss should be denied.

### V.   Plaintiff's Claim Of Unjust Enrichment/Restitution Is Actionable

Defendants' argument that Plaintiff's unjust enrichment claim must fail is without merit. Count III of Plaintiff's Complaint sets forth a straightforward claim for unjust enrichment. The claim as set forth in paragraphs 50-56 is equitable in nature and seeks restitution and equitable relief as a result of Defendants' wrongful conduct.

To establish a claim for unjust enrichment, a plaintiff need only allege facts sufficient to show "1) Plaintiff conferred a benefit on Defendant; and 2) circumstances are such that to deny recovery would be unjust." Palmeri v. LG Electronics USA, Inc., 07-5706, 2008 WL 2945985, at *5 (D.N.J. July 30, 2008); Weichert Co. Realtors v. Ryan, 128 N.J. 427, 437 (1992)("Courts generally allow recovery in quasi-contract when one party

has conferred a benefit on another, and the circumstances are such that to deny recovery would be unjust").

Here, Plaintiff has properly pled the necessary elements of a claim for unjust enrichment. Including installation, Plaintiff paid Defendants approximately $300 for a garage door opener that would function correctly and light up her garage. Defendants' garage door opener was defective and did not light up the garage. Retention of the payment would unjustly enrich Defendants. Complaint ¶¶50-56. In addition to the approximately $300 paid for the unit, Plaintiff paid Defendants $65 to repair the defective garage door opener. The payment of the $65 is in of itself a viable claim for unjust enrichment.

Palmeri v. LG Electronics USA, Inc., 07-5706, 2008 WL 2945985 (D.N.J. July 30, 2008) supports Plaintiff's argument. In Palmeri, plaintiff purchased a refrigerator from defendant. Plaintiff alleged that the refrigerator was defective in that it dispensed water that was toxic. Plaintiff asserted a claim for unjust enrichment. Defendant moved to dismiss. In finding that plaintiff properly pled a cause of action for unjust enrichment, the Court stated:

> Count V is quite simple and straightforward. Plaintiff has alleged sufficient facts that Defendants have fair notice of the factual allegations on which the claim is premised: 1) Plaintiff paid

24

Defendants for a refrigerator that would
not put toxic chemicals into his drinking
water; 2) Defendants' refrigerator put
toxic chemicals into Plaintiff's drinking
water; and 3) retention of the payment
would unjustly enrich Defendants. Under
Twombly, Plaintiff only needs to plead
sufficient facts that the claim is
plausible on its face. Plaintiff has done
so.

Id., at *5. Similar to the plaintiff in Palmeri, Ms. Rait

has set forth that the garage door opener she purchased was

defective and that it would be unjust for Defendants to

retain the monies paid to them under the circumstances.

Defendants argue that Plaintiff's claim for unjust

enrichment should be dismissed because the claim is really

for restitution. Defendants' Brief at 12. This argument

must fail. As stated above, Plaintiff has satisfied the

pleading requirements for unjust enrichment. In addition,

"causes of action labeled as 'unjust enrichment' may

nonetheless be understood as claims for restitution." In

re Ford Motor Co. E-350 Van Products Liability Litigation,

No.03-4558, 2008 WL 4126264 (D.N.J. Sept. 2, 2008).

Whether the cause of action is for unjust enrichment or

restitution, the claim is simple: Plaintiff purchased a

defective product and was caused to pay additional monies

for repair costs. Under the circumstances, it would be

unfair for Defendants to retain the purchase price of the goods and the additional repair costs.

Also, Defendants argue that Plaintiff's unjust enrichment claim must fail because that cause of action is only available where there is no adequate remedy at law. Defendants' Brief at 11. Defendants' argument to dismiss the unjust enrichment claim is without merit because it is too premature to determine if there is an adequate remedy at law to bar this claim. See, e.g., Titan Stone, Tile & Masonry, Inc. v. Hunt Construction Group, Inc., No. 05-3362, 2006 U.S. Dist. LEXIS 70569 (D. N.J. Sept. 26, 2006) (finding it too early to consider if Plaintiff has any adequate remedy at law); see also, In re Prudential Ins. Co. of Am. Sales Practices Litig., 975 F.Supp. 584 (D.N.J. 1996) (finding it too early to determine if a valid contract governed the relationship between the parties). Plaintiff must be allowed to pursue and take discovery on all its claims. At the end of the case, Defendants can pursue the "no adequate remedy at law" argument.

Moreover, under the Federal Rules of Civil Procedure, a party may set forth several alternative or hypothetical claims or theories of recover, "whether based on legal [or] equitable grounds." Fed. R. Civ. P. 8(e)(2). Component Hardware Group, Inc. v. Trine Rolled Moulding Corp., No.

05-891, 2007 U.S. Dist. LEXIS 54900 (D. N.J. July 27, 2007); In re K-Dur Antitrust Litig., 338 F.Supp. 2d 517 (D. N.J. 2004) (holding that equitable remedies should not be dismissed even if there is an adequate remedy at law); Dykstra v. Ryder/P.I.E. Nationwide, Inc., No. 85-3212, 1985 WL 25639, at *5 (D. N.J. Dec. 9, 1985) (holding that if court should decide there is no recovery under a contractual theory, then "it may in turn deal with the equitable theory").

## VI.  Plaintiff Has Properly Pled a Cause of Action For Breach of the Implied Warranty of Fitness For a Particular Purpose

Defendants' motion to dismiss the Implied Warranty of Fitness for a Particular Purpose should be denied. A good is fit for a particular purpose "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." N.J.S.A. 12A:2-315. The comment to this section sheds important light on what a buyer must establish.

> Whether or not this warranty arises in any individual case is basically a question of fact to be determined by the circumstances of the contracting. Under this section the

27

> buyer need not bring home to the seller
> actual knowledge of the particular purpose
> for which the goods are intended or of his
> reliance on the seller's skill and
> judgment, if the circumstances are such
> that the seller has reason to realize the
> purpose intended or that the reliance
> exists. The buyer, of course, must actually
> be relying on the seller.

Comment 1 to N.J.S.A. 12A:2-315 (emphasis added).

Further, with the advent of the internet and buyers purchasing products through websites, it is incredulous to believe that a buyer must actually speak to a seller and tell the seller the particular purpose for which the goods are required. In fact, it is not necessary for the buyer and seller to meet and exchange information in person or for the seller to actually know the buyers particular purpose for the goods in order for the Implied Warranty of Fitness for a Particular Purpose to be breached. <u>Filler v. Rayex Corp.</u>, 435 F.2d 336 (7th Cir. 1970); <u>Lewis v. Mobil Oil Corp.</u>, 438 F.2d 500 (8th Cir. 1971)(Seller need not have actual knowledge as long as seller simply has reason to realize the purpose intended by the buyer); <u>Berkeley Pump Co. v. Reed-Joseph Land Company</u>, 279 Ark. 384, 395, 653 S.W. 2d 128, 133 (1983).

In <u>Filler v. Rayex Corp.</u>, 435 F.2d 336 (7th Cir. 1970), plaintiff's baseball coach read an advertisement in a

newspaper about a type of sunglasses. After reading the article, the coach purchased the glasses. Plaintiff wore the glasses and was injured when a ball struck the glasses and they shattered. Plaintiff sued alleging, among other things, breach of the Implied Warranty of Fitness for a Particular Purpose.[5] The Court found that even though the buyer or the coach did not inform or have any communications with the seller regarding the particular purpose by which they intended to use the item, a breach of the implied warranty was established.

Here, Plaintiff performed her shopping for the garage door opener on Sears' website on the internet. Complaint ¶¶18-19. Sears' website touts the lighting system of the garage door opener purchased by Plaintiff. The website states:

> Chain drive with steel construction and a brighter light (two 100W bulbs) for added safety, convenience. . . .

> Automatic lights can be adjusted to turn off automatically from 1 to 4 minutes.

As a result of Defendants' information listed on the website, Plaintiff purchased the Sears garage door opener. By highlighting the lighting system in its website, Sears

---

[5] The section of the UCC at issue in _Filler_ is identical to N.J.S.A. 12A:2-315

knew that customers who were looking for a garage door opener with extra lighting features would rely on that information. In other words, the website acts as the salesperson and provides customers with information and answers to customers questions.

Defendants' Motion to Dismiss the Implied Warranty of Fitness for a Particular Purpose claim should be denied.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Complaint should be denied.

Respectfully submitted,

NAGEL RICE, LLP
Attorneys for Plaintiff


By:   s/ Bruce H. Nagel
     BRUCE H. NAGEL

DATED:  October 3, 2008