**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MELANIE RAIT, | ) |
| | ) |
| Plaintiff, | ) Civil Action No.: 08-2461 (JLL) |
| | ) |
| v. | ) |
| | ) **OPINION** |
| SEARS, ROEBUCK and CO. and | ) |
| SEARS HOLDING CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**LINARES**, District Judge.

This matter comes before the Court on the motion to dismiss Plaintiff's Amended Complaint filed by Defendants Sears, Roebuck and Company and Sears Holding Corporation ("Sears") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Melanie Rait commenced this class action asserting claims for violations of the New Jersey Consumer Fraud Act ("CFA") (Count I), common-law fraud (Count II), unjust enrichment (Count III), breach of the implied warranty of fitness for a particular purpose (Count IV), and breach of the implied warranty of merchantability (Count V). Sears previously moved to dismiss Counts I through IV of the Complaint. This Court granted the motion with respect to Counts I, II, and IV, dismissing those counts without prejudice; the Court denied the motion with respect to Count III. Ms. Rait filed an Amended Complaint asserting the same claims but providing additional facts. Sears presently moves to dismiss the amended CFA (Count I), common-law fraud (Count II), and

breach of the implied warranty of fitness for a particular purpose (Count IV) claims.  This Court has considered the submissions in support of and in opposition to the motion and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.  For the reasons set forth below, Sears' motion to dismiss is granted.

I.      BACKGROUND

As outlined in this Court's prior Opinion, Ms. Rait set forth the following facts in her original complaint.  She purchased a Sears Craftsman garage door opener from the Sears website for $171.19.  (Compl. ¶ 20.)  She made her decision after looking at various models on the website, choosing this particular opener "because it had double lights and [she] wanted her garage to be well lit."  (Id. at ¶ 19.)  In addition to the cost of the opener, Ms. Rait paid an installation fee of approximately $125.99.  (Id. at ¶ 21.)  After three weeks, Ms. Rait claims that a light went out.  (Id. at ¶ 23.)  She replaced the bulb, but it kept burning out anywhere from a couple of days to two weeks after bulb replacement.  She asserted that she replaced the bulb at least six times.  (Id. at ¶ 24.)  As a result, Ms. Rait had the opener inspected by a Sears repairman who informed her that the socket was bad and had to be replaced; she replaced it.  (Id. at ¶ 25.)  She paid $65.00 for the repair.  (Id. at ¶ 26.)  Ms. Rait stated that she is "aware of numerous complaints on various internet sites as well as Sears' own website regarding similar issues with Sears Craftsman brand garage door openers."  (Id. at ¶ 29.)  Ms. Rait asserted that Sears was aware of defects in the garage door and intentionally placed it on the market, without informing customers of the defects, in order to generate additional revenue in the form of repair fees. (See, e.g., id. at ¶¶ 7-10, 42-46.)

Ms. Rait's Amended Complaint is substantially similar to her original Complaint, but she has added a few additional facts.  She provides the website description of the garage door opener

that she purchased. (See Am. Compl., at Ex. A.) The description reads: "Chain drive with steel construction and a brighter light (two 100W bulbs) for added safety, convenience. Premium control console with illuminated push buttons and 2 remote controls." (Id.) She asserts that prior to her purchase she looked at other garage door models and "found they did not provide the specific lighting needs required." (Id. at ¶ 20.) She also states that "Defendants knew that customers like Plaintiff would select products based on descriptions and representations made on Defendants' website[; specifically] . . . Defendants knew that by touting the lighting features on its website, customers would rely on that information in making purchasing decisions for that particular purpose." (Id. at ¶ 21.) Ms. Rait also provides numerous postings from various websites, including Sears' own website, reviewing and complaining about Sears' garage door openers. (See id. at ¶ 30 and Exs. B-G.) These comments relate to both the model of door opener she purchased as well as other or unknown models. (See id.) They relate to light socket issues, the alleged defect claimed by Ms. Rait, as well as other alleged issues, with the vast majority not relating to light socket issues. (See id.) The majority also post-date Ms. Rait's purchase. (See id.) As Ms. Rait summarizes: she has provided "forty complaints with four on point and thirty-six with system defects." (Mem. of Law on Behalf of Pl. in Opp'n to Defs.' Mot. to Dismiss, at 14 [hereinafter "Opp'n Br."].)

## II.     LEGAL STANDARDS

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (U.S. 2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully;" mere consistency with liability is insufficient. Id. In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. It is the underlying specific facts alleged in a complaint that should be treated as true and evaluated. Thus, as the Iqbal Court instructed, a court's "analysis [begins] by identifying the allegations in the complaint that are not entitled to the assumption of truth." Id. at 1951.

**III.   DISCUSSION**

Sears again argues that Ms. Rait's fraud claims (Count I and II) should be dismissed because she has failed to state a claim for fraud under the CFA or common law and because she has failed to plead these fraud claims with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. Sears also again argues that Ms. Rait's claim for a breach of an implied warranty of fitness for a particular purpose (Count IV) should be dismissed because there is no proof that, in purchasing the garage door via the internet, Sears knew of Ms. Rait's special purpose or that she reasonably relied on Sears' expertise in selecting the garage door for a particular purpose.

**A.   Count I: The New Jersey Consumer Fraud Act**

As set forth in this Court's prior Opinion, "to state a CFA claim, a plaintiff must allege three elements: (1) unlawful conduct . . .; (2) an ascertainable loss . . .; and (3) a causal

relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 929 A.2d 1076, 1086 (N.J. 2007) (internal quotations omitted); see also N.J. Stat. Ann. § 56:8-2.  The CFA's broad definition of unlawful practice covers affirmative acts and knowing omissions, as well as regulatory violations.  Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).  However, while a "breach of warranty or contract is unfair to the non-breaching party," a breach of warranty alone is not a per se unlawful practice.  Id. (citing D'Ercole Sales, Inc. v. Fruehauf Corp., 501 A.2d 990, 998 (N.J. Super. Ct. App. Div. 1985)).  A claim under the CFA requires more; it requires that a plaintiff allege "substantial aggravating circumstances." Suber v. Chrysler Corp., 104 F.3d 578, 587 (3d Cir. 1997); see also Cox, 647 A.2d at 462.  To meet this standard, a plaintiff must demonstrate that the business behavior in question "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer." Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 655 A.2d 417, 430 (N.J. 1995).  Additionally, to adequately state a claim under the CFA, not only must a plaintiff allege facts sufficient to establish the elements discussed above, but those allegations must be plead with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.  See Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004); Parker v. Howmedica Osteonics Corp., No. 07-2400, 2008 WL 141628, at *3 (D.N.J. Jan. 14, 2008).

      In the prior motion to dismiss Opinion, this Court found that "[t]he only precise facts Ms. Rait alleges are that she purchased a garage door opener from the Sears website, that there were immediate problems with one of the light bulbs on the opener, that she was told by a Sears repairman that the socket was bad and needed to be replaced, and that she paid $65 for the repair."

<u>Rait v. Sears Roebuck and Co.</u>, No. 08-2461, 2009 WL 250309, at *4 (D.N.J. Feb. 3, 2009).  The only *facts* added in the Amended Complaint are the actual Sears' advertisement to which she responded and copies of anonymous internet postings discussing various Sears' garage door openers.

Ms. Rait asserts that "[w]hen a large retailer makes representations to the public about the quality and specific features of its product, knows that the product's defect renders a highlighted feature inadequate and results in a costly service call inuring to the retailer's financial benefit and the purchaser's detriment, and fails to correct these known defects or inform the purchaser that a costly service call will most likely be required then this constitutes a consumer fraud." (Opp'n Br. at 1.)  She further asserts that "[t]he misrepresentation is that Sears makes a quality, defect free garage door opener that would provide adequate lighting." (<u>Id.</u> at 25.)  She states that "Sears knew that it was misstating the quality of it product by virtue of its knowledge of the numerous complaints posted on the internet and the frequency of repair calls made by purchasers of the product, as reported in the specific internet postings . . . ." (<u>Id.</u> at 25.)  She concludes that her one light socket repair coupled with the various internet postings demonstrate that Sears "must necessarily [continue to sell the openers] with the intent that consumers hire Sears to repair the defective openers so that Sears will receive yet additional monies related to repair costs." (<u>Id.</u> at 4.)

Ms. Rait's statements, while perhaps compelling in the abstract, are not supported by the facts alleged.  First, the advertisement in no way states that the garage door opener would be "defect free."  It also does not state anything about the quality of the opener, such as stating that the opener is the best opener on the market or that it will provide better light than other products.

Additionally, her allegation that when she bought the opener Sears knew that the opener was likely to need repair yet continued to sell it so that it could garner additional repair fees is supported solely by various internet complaints, only four of which she states are "on point." She does not allege any misrepresentations related to her actual single repair; she is alleging that when Sears sold the opener it knew a repair would be needed. Additionally, some of the comments relied on were on Sears' own website for her to review prior to purchase; there is no allegation that Sears hid any complaints. The various and disparate internet complaints relied on here are not sufficient to support Ms. Rait's broad conclusion regarding Sears' knowledge and intent even if this Court were to find internet complaints valid support as a general proposition, which it does not do.

     Ms. Rait cites several cases to support her position. The Court does not find the majority of these cases factually similar to this case. The closest case to the facts alleged here is Payne v. Fujifilm, which also included an assertion of a defect and a reliance on internet postings to support an allegation of knowledge and intent on the part of the defendant. No. 07-385, 2007 WL 4591281, *10 (D.N.J. Dec. 28, 2007). However, upon careful review, Payne actually supports Sears' position. In that case, the court found that "a liberal reading of Plaintiff's Complaint suggests that Plaintiff's CFA claim pertains to contractual unconscionability, rather than fraud." Id. As such the Court found that Rule 9(b)'s requirements were not applicable, and that, therefore, a claim had been sufficiently stated. Id. However, the Court noted that "if Plaintiff had intended to plead a fraud claim, such claim has not been pled with the requisite particularity [required by Rule 9(b)]." Id. at *10 n.6. Ms. Rait's CFA claim clearly is based on allegations of fraud. In Payne, the plaintiff had not asserted that the defendants were aware of the internet

complaints. This Court finds that Sears' awareness of varying complaints on its website, which it did not remove or hid, does not lead to a different conclusion here. <u>Iqbal</u> requires "more than a sheer possibility that a defendant has acted unlawfully."

Based on the facts alleged by Ms. Rait, this Court finds that her Amended Complaint again fails to allege the type of aggravating circumstances required to state a claim under the CFA. For example, she does not allege: that Sears had issued a technical bulletin noting problems with the doors yet denied such problems to Ms. Rait, see <u>Suber</u>, 104 F.3d at 587; that Sears violated some independent statute in the way it marketed its product or effected its repairs, <u>see id</u> and <u>New Mea Constr. Corp. v. Harper</u>, 497 A.2d 534, 542-43 (N.J. Super. Ct. App. Div. 1985); that the Sears repairman took the opener apart then told Ms. Rait that the charges would be much higher and that if unpaid, he would not put the opener back together, see <u>Hyland v. Zuback</u>, 370 A.2d 20, 22-25 (N.J. Super. Ct. App. Div. 1976); or that the repairmen recommended unnecessary repairs or charged for repairs that were not made, see <u>Turf</u>, 655 A.2d at 432. She only has alleged that she purchased a product that broke once, that she was charged for a successful repair, and that there were some complaints about the product on the internet.

This Court agrees with Sears that if Ms. Rait's position is accepted that virtually every consumer product company would be subject to fraud claims and extensive discovery. All any plaintiff would be required to show is that a product broke once and that someone had complained about it on the internet. The real issue here simply is that Ms. Rait brought a product that broke and she had to pay for a repair which she asserts she should not have had to pay for. Her allegations do not show behavior that so "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer." <u>Turf</u>, 655 A.2d at 430.

Thus, this Court again finds that the facts adequately plead at most a claim for breach of warranty without substantial aggravating circumstances. Ms. Rait has failed to plead with the specificity required by Rule 9(b) facts sufficient to support a claim under the CFA. Therefore, Count I will be dismissed without prejudice.

### B.   Count II: Common-Law Fraud

In its prior motion to dismiss Opinion, this Court stated:

> As Ms. Rait points out in her opposition, common law fraud involves a more onerous standard than a claim for fraud under the CFA because under the CFA a plaintiff does not have to prove that he was actually misled or deceived. See Cox, 647 A.2d at 462. Therefore, given that Ms. Rait has failed even to plead her CFA claim with particularity, it follows that she has not sufficiently plead facts to support a common law fraud claim which requires her to establish that (1) Sears made a false representation of a presently existing or past fact, (2) Sears knew the representation was false, (3) Sears intended for Ms. Rait to rely on the representation; (4) Ms. Rait reasonably relied on the misrepresentation, and (5) as a result she was harmed. See Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997).

Rait, 2009 WL 250309, at *5. This statement applies with equal force to the Amended Complaint. Therefore, Count II again also will be dismissed without prejudice.

### C.   Breach of the Implied Warranty of Fitness for a Particular Purpose

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified ... an implied warranty that the goods shall be fit for such purpose." N.J. Stat. Ann. § 12A:2-315. It its prior Opinion this Court held that "advertisements that tout specific uses may create an implied warranty of fitness for a particular purpose." Rait, 2009 WL 250309, at *5 (citing Filler v. Rayex Corp., 435 F.2d 336, 338 (7th Cir. 1970)). However, the Court also acknowledged that not every advertisement

does so.  Id.  As noted in this Court's prior Opinion, the Court in Filler found an implied warranty for a particular purpose based on a sunglass advertisement where the glass were intended to be used by baseball fielders and they were not in fact fit for that purpose.

Here, the garage door opener advertisement merely stated in relevant part that the opener had "a brighter light (two 100W bulbs) for added safety, convenience."  It stated that it had two lights, which it had, one of which needed a repair; Ms. Rait does not assert that the lights did not or could not work as advertised after the repair.  From the facts alleged in both the original and Amended Complaint, the opener appears to currently operate as advertised.  These facts may support her claim for a breach of the implied warranty of merchantability, a claim which Sears has not moved to dismiss, but they are insufficient to support that a warranty of fitness for a particular purpose exists.  Therefore, this Court dismisses Count IV without prejudice.

## IV.    CONCLUSION

Because this Court finds that Ms. Rait's Amended Complaint again fails to adequately plead her fraud claims (Counts I & II) and fails to state a claim for breach of warranty of fitness for a particular purpose (Count IV), this Court grants Sears' motion to dismiss these counts without prejudice to Ms. Rait to *move* to amend her Complaint to correct any deficiencies pursuant to Rule 15 of the Federal Rules of Civil Procedure and Rule 7.1(f) of the Local Civil Rules.  However, this Court notes that, unless Ms. Rait can allege facts about her specific experience that show something more than a typical repair scenario, it is likely that such amendment would be futile.  An appropriate Order accompanies this Opinion.

DATED: August 10, 2009                         /s/ Jose L. Linares
                                                                    JOSE L. LINARES
                                                                    UNITED STATES DISTRICT JUDGE